Good morning, I'm Philip Deitch. I represent Mrs. Jackson. And my only issue involves the wire cap. We've allocated five minutes apiece. And so I will be essentially very brief. One of the concerns over the years that at least I have developed is there does seem to be a kind of an unwritten street gang exception among district court judges when there are, when there's an investigation of a street gang or allegations of a street gang. There is the sense that there is kind of an unwritten lowering of the bar of the necessity requirement as I believe happened in this particular case. And it also does seem to be that some investigations like this one in my view were tailored with the ultimate goal of having essentially a wire cap as occurred in this case. Originally this investigation began I believe in August of 01. Between August of 01 and the time of the wire cap, the investigation turned six informants. Suddenly at the time of the application for the wire cap, all six informants suddenly were not available. Some of them were in jail. The declarations did not indicate how long they were going to be in jail, whether it was an issue of days or weeks or months. But suddenly after ten months or so of investigation where they turned six informants, suddenly no more informants were available and all those informants that had been available before suddenly were not. Some of the concerns I have include the fact that there were no trash searches in this case undertaken. There were in this entire period of time a total of three surveillances. Essentially they were meaningless. The surveillances were instances in which the police would do routine drive-thrus and were instantly detected, which I do believe to be an issue of the quality of the surveillances distinguished from any type of gang activity. There were I think three attempts to interview potential cooperators, people that had apparently gathered or accumulated a case of some kind, and they were told, as I recall the effort, they were told that if they cooperated, their cooperation would be brought to the attention of the prosecutors, which is not much of an excuse. It seems overall, when you look at this entire investigation, that once there was the situation in July of 2002 where the apartment was, the equipment, the video equipment was detected by the gang persons, that essentially any effort, all effort at utilizing standard investigative techniques stopped. And it seems to me that because this is a street gang case, the investigation of course was of the Pueblo, I don't know what they're called, Pueblo bishops, I think they are, that somehow the bar gets lowered with regard to the issue of necessity. Well, maybe it is that street gang cases simply inherently make it more difficult to use standard techniques, it's hard to infiltrate the street gang. Well, but it seems to be done reasonably routinely, and this, it may be difficult, but here we had six cooperators who gave volumes of information about the particular street gang, one of whom was cooperating by making buys. The other two that were willing to make buys were apparently in jail, again, we don't know how long, or whether they could have been given some kind of an immunity, and so it does appear that although it's difficult to infiltrate because of the potential of danger to an undercover officer, there is a large potential of using cooperators. The six that they had, there were, everyone had a case, and so all of a sudden this source somehow seemed to disappear, and I'm suggesting that that was, this investigation was shut down prematurely because it looks to me at least when I read this affidavit as if the investigation was geared from the onset to essentially get a white cap. And so there was really no major or significant effort at utilizing standard investigative techniques. You're going to use five minutes? No. You've used more than five minutes. Thank you. Good morning, Your Honors. If it please the Court, Gretchen Fuselier on behalf of Juan Emanuel Lococo, excuse me. I would essentially like to indicate that Mr. Lococo's position is apparently different or significantly different from the position of Edwards and Jackson. Mr. Lococo was not the initial target subject of the October 23rd, 2002 affidavit to obtain an order for wiretapping. And our position is that there was a substantial preliminary showing made to the district court's judge who denied his motion to dismiss the wiretapping communications with him. And those indications are that Special Agent King knew at the time that he submitted his October 23rd, 2002 affidavit of Mr. Lococo. And our position is that he knew this and intentionally omitted it because of several items that appear in the record. I don't want to take up your time if you don't want to go there, but I actually, on the wiretap, of course we can all read it and there's some overlapping issues. What about the sentence with respect to your client? Yes. And the fact that he made a point of not stipulating to anything about crack cocaine. What is your position on that vis-a-vis Apprendi? Yes, our position is, Your Honor, that the plea agreement entered into by Mr. Lococo was very precise. And the precision of that plea agreement was carried over into the plea colloquy in court. There was discussion between Mr. Lococo, his counsel, the assistant U.S. attorney, and the judge during the plea colloquy. And, in fact, the judge very specifically indicated that the portion of the indictment and part of the plea agreement indicating that Mr. Lococo knew that the powder cocaine he was supplying would be transitioned into crack cocaine would be stricken. And, in fact, at the sentencing, he indicated to Mr. Lococo that he had stricken it in both cases 687 and case 689. Consequently, when Booker was decided at the time, well, it was decided before the sentencing, but at the time of the sentencing, Booker had been decided. Therefore, as we argued in our brief, Apprendi, Blakely, and Booker should have precluded the district court's judge from making the finding of quantity inasmuch as Mr. Lococo in his plea agreement and the assistant U.S. attorney during the plea colloquy agreed that he was not pleading or admitting in pleading to any quantity, nor was he admitting to crack cocaine, only powder cocaine. Therefore, because the court's finding at the time of sentencing that there was a certain quantity in case 687, I think, it found more than 150 grams of crack cocaine, and in 689 it found, I think, one and a half kilos of crack cocaine, that that was an inappropriate finding under the three cases, as well as under the contract entered into between Mr. Lococo and Mr. Lococo. And the government. And what is the difference then in the sentence when you get that finding as your foundation? Yes, the difference would be, Your Honor, because he pledged to an unspecified amount of powder cocaine, that would render his base offense level 12. However, he was also given two points for acceptance of responsibility. That brought it down to 10. And we also. And no minimum? There would be no mandatory minimum at that point. Therefore, if we calculate the criminal history, we support the position that the court committed error by ascribing three points to each of his three priors when, in fact, he was sentenced jointly, or they were consolidated for purposes of sentencing. And therefore, there should have only been three points, which would have put him in a Category 2. Were the three priors based on, there were three separate incidents, right? Yes. Well, there was no finding of that. There were three prior nonviolent sentences that were consolidated. The court made no finding on whether or not there had been intervening arrest. So, in the absence of that kind of finding, the sentence should have been. Did you ask for a finding? Well, I didn't represent him at the time, and I didn't see anything in the record indicating that. Was there an objection? There was an objection. You're speaking on the prior proceeding. No, Your Honor. I'm talking about the sentencing which occurred in 2005, I believe it was, in this case. It comes up, the PSR recommends that this be treated as three separate offenses, right? Yes, that's correct. Was there an objection to that? I believe there was, Your Honor. I believe there was an objection to. And was it based on the fact that those. Yes, that they were consolidated for purposes of sentencing. I believe that I would need to, I think I have that in the brief, but I believe there was an objection to that. However, in the absence of an objection, that would have brought it up, as the court calculated, to a criminal category of four, as opposed to two or three. And even under category four, with a criminal offense, with a base offense level of 10, the maximum range, or the range would be 15 to 21 months. That would have been the maximum. Under our argument, indicating that it should not have been a level four, but a level two, the maximum three, perhaps, it would have been under a level two, eight to 14 months, and under a three tend to. Isn't this exactly the kind of thing that is covered by the plea waiver? Pardon me, Your Honor? Isn't that exactly the kind of issue that's covered by the plea waiver? No, Your Honor. The sentence? No. I mean, the plea contains a waiver, appeal waiver, for sentences, unless there's a departure. Your Honor. But you're not talking about departures here. You're talking about calculation. That's correct. And the sentence imposed by the district court judge was not departure. It was based on just the calculations of the offense. So why isn't this washed out by the appeal waiver? Because under the plea agreement, the language indicated that, if I can just grab my, but the language was, thank you. The language indicated that, but for, on page 92 of volume one of the appellant's excerpts of record, setting forth the language, it indicated, I think it's, on page. This is Lococo? Yes, that's correct, Your Honor. I thought it was on page 101, volume one. Well, go ahead. Where do you see, where do you see it? On page 98 of the excerpts of record, paragraph 17 of the plea agreement. 98? Volume one. Hold on a second. Let me get to 98. And this is the unsealed excerpts. This is a bunch of, it's a transcript page, right? That's correct, Your Honor. And this is page seven of the plea agreement that was entered into between Mr. Lococo and the government. The actual agreement begins on page 92, plea agreement for defendant Juan Emanuel Lococo. However, to respond to your question. What is the actual language? On paragraph 17. You're reading from his plea agreement? Agreement, yes. With respect. Just a minute, if you can. Okay. Paragraph 17? Yes, 17. One second. On page 98. Okay. With respect to the facts set forth in the attached statement of facts, and those statement of facts appear on page 106 of this excerpt of record. To the extent defendant has a right to have the facts used to determine the applicability  of the law beyond a reasonable doubt, defendant waives those and agrees that the court may, regardless of the method by which sentence is imposed, rely on these facts. Again, referencing the facts. But I think Judge Kaczynski is referring to the waiver of appeal. Yeah, appeal waiver. He waives his rights to appeal in a separate paragraph, right? And that's on page. No, Your Honor. This specifically relates to Blakely and Ameline. What about paragraph 22 on page 101? Yeah, that's the one you have to look at. The one that says defendant gives her the right to appeal. We're talking about an appeal waiver. Yes, however, there is an exception, and that is if there was a sentence that was unconstitutional. And our argument is that it was an unconstitutional sentence when you look at it through the prism of Prendy, Booker, and Blakely. Well, let's talk about... Well, if you do that broadly enough, then any problem with the sentencing winds up being constitutional, right? No, Your Honor. Let's look at the prior offenses. You're saying that the three prior should have been treated as a single offense. That's a calculation problem. It's not a constitutional problem. It's not a departure problem. You're saying that the district judge miscalculated the criminal history point. Well, Your Honor, although I didn't cite the case, I think there is U.S. Supreme Court precedence, and I'm trying to think of the case name, that indicates that a sentence should not be greater than that ascribed to the particular offense. So if we're speaking about the sentence being ascribed to this particular offense, when you calculate the totality of the provisions for his sentence, it would be extraneous to the legislation. You know, I understand what you're saying. But if I understand correctly, if I understand correctly what you're saying, is that any time there's a miscalculation, it becomes a constitutional violation. And if you read the sentencing, if you read that exception to the appeal waiver as broadly as you do, there's no appeal waiver at all for sentences, because every time the district judge makes a mistake in the calculation, he winds up imposing a sentence that's higher than it's deserved, and therefore it's unconstitutional under Blakely. So if that's your argument, it's a pretty broad argument. Well, Your Honor, that isn't exactly my argument, although I do understand the correlation that you're making with my argument. The gravamen of my argument is that if we just overlook the calculation of the criminal history based on his priors, his sentence was still incorrectly meted out, because the court incorporated... I think the sentence was wrong, okay? But now the question is, was it within the statutory maximum that was in the plea agreement? No, it was not, because the court used crack cocaine instead of powder cocaine, to which he entered his plea to, and which the court... No, that's a different question. Yeah, we've got two things happening here. The court is bopping back and forth. So let's just say, I guess the way... It really comes down to construing the plea waiver, would you agree with that? As to what's in and what's out as a result of the plea waiver that's in the plea agreement? I mean, excuse me, the appeal waiver, I should have been more precise. No, Your Honor, the way I see it, the waiver of the appeal is sullied, basically, because that does not arise if there has been a problem with the implementation of the sentence based on the plea agreement and the type and quantity of drug. So we would not even, I guess, get to this waiver of the appeal until the issue is resolved relating to whether or not the court accurately... Right, but you see that the one difficulty with that is he says, okay, here's my agreement. I want to, you know, plea to A, B, C, and D, and here's my agreement. And then he goes on to say, and even though I reserve this crack cocaine issue, cross out, reserve, then he goes on to say, however, I give up the right to appeal my sentence so long as, one, the sentence is within the maximum specified in the plea agreement. That's one point. So is it within the maximum talked about in the plea agreement? I think there would be an argument to be made that prior to Booker, when this was signed, perhaps, but certainly after Booker, it would not be within the statutory maximum that was specified earlier in the plea agreement. Well, they talk about life imprisonment and various other things that are in here. So I guess it seemed to me that first specification is met, and then the second one is your plea waiver isn't any good. I mean, your sentencing waiver vis-a-vis the appeal isn't any good unless the court applies the guidelines, doesn't depart upward, and imposes sentence within the range corresponding to the determined total offense level and criminal history category. Is there a problem with that in this case? Well, I think so because of the language on page eight of the agreement, which is page 99 of the excerpts, that indicates if Blakely applies to the guidelines, it renders them inapplicable and leaves the court free to exercise its discretion to sentence bound only by the statutory maximum. Well, if that's true, then he couldn't possibly, the sentencing judge couldn't possibly violate the guidelines, correct? No, couldn't violate the guidelines if the court exercised its discretion under this provision. However, since he did not exercise his discretion under this provision to not sentence him under the guidelines, since he sentenced him under the guidelines, he obviously did not exercise this, his discretion under this provision. And by doing so, it's our position that the guidelines being advisory only at this point at the time of sentencing, he should have been, Mr. Lococo should have been re-advised about what he was waiving and what he was not waiving. And that was not done. Is that a plea for ineffective assistance of counsel? Well, Your Honor, I didn't, in my opinion, I didn't have sufficient information in the record to raise that. And I thought that's raised on collateral anyway, right? I mean, you might, you might get yourself coming and going in this plea agreement for good reason, because you're sort of starting, not you, but... Yes, I understand, Your Honor. The defendant, you know, he's starting down this road about Blakely's out there, so I better put something in there and reserve my rights. On the other hand, Blakely and Booker and all that means there's no sentencing guidelines. And then he goes ahead and he then waives his appeal. So we're a little bit stuck. Because I think he waived it, essentially. Well, he can preserve his rights vis-à-vis the district judge. You know, he pleads and says, I don't want to see this change, I preserve my rights, and I insist that the district judge apply Blakely, or, you know, whatever the requirements are. He can also say, but I waive my right to appeal, whatever the district judge does, I'm stuck with it. But at the time of the entry of the plea, the judge said in the transcript that we don't know what Blakely means at this point, because at that point, Booker was still pending. Well, that's part of what you want. He probably should have said then in his appeal waiver, and I don't waive anything that has to do with all the stuff I set out in this more complicated paragraph 17 about Blakely, Booker, and Amaline, and everything else. Yeah, that could have been preserved for appeal, too. Let's just, we just don't even know the answer to that. So we can't, how could we waive something we don't know the answer to? Well, that's true, Your Honor. However, I think everyone was confused in court, including the judge. Well, that's often why people buy appeal waivers. That's maybe why the government gave your client a better deal than otherwise. Say, we don't want to mess with this. It's messy. We don't want to have this thing continue, so we'll cut him a better deal. And whatever it is, we'll all live by what the district judge does. I think the appeal waiver applies to the government, too. It had been unhappy with the sentencing. It could not have appealed either. Well, as I recall, and I would be able to find it in the excerpts under the sealed portion, probably not under the sealed portions, but at the time, or prior to hearing, I think both the government and the defense attorney filed documents with the trial judge indicating that Booker had now been decided, and nothing ever came of that. It seems as though the decision of Booker was well known at this time, but the court just did not address it. And I don't think that Mr. Lococo should be the ones to suffer those consequences, especially in light of the fact, in the government's brief, indicating that it concedes that there probably was no probable cause to arrest or search Mr. Lococo's home, but for the wiretap. And there's a problem, as far as Mr. Lococo, in my opinion, regarding his later on being included into the wiretaps. Okay, I think you've more than had your time. He did reserve his right to file a post-conviction attack on ineffective assistance of counsel, it appears. And also any constitutional impediments. Correct. Yes, however, in looking at the issue of ineffective assistance of counsel, it just doesn't appear that that would have been appropriately raised in the direct appeal. I understand. I would need to bring in extraneous declarations. Right, because then we would tell you to wait. Yes. So we appreciate that. And we appreciate your restraint on that. Thank you, Your Honor. Unless there are other questions, I would submit at this point. Thank you. Your Honor, Lisa Solano-Peterson for Defendant Edwards. And just to be very brief, I just wanted to make a few points in regards to necessity for the wiretap. First of all, there was a big omission in regards to Defendant Jackson that she was actually not a member of the Pueblo Bishops' gang. She was a member of a rival gang called the Bloodstone Villains. So then it really brings up the question as to why there should be a wiretap of her phone since it appears from the affidavit of Target Telephone Number One that they were going after the Pueblo Bishops. Well, she had a relationship with somebody on the Bishops, right? She was affianced or girlfriend or something of that sort. There was some allegation about that, but basically that was something that should have been, should have, apparently they knew about this for quite a long time. So there was something that should have been included in the affidavit. Knew about what? The fact that she was with the Pueblo Bishops. But that was omitted from the affidavit because it is something that would go into the issue of necessity. And the other thing was that CS1 was actually very effective after the discovery of the video equipment because she was involved in, I mean, CS1, whoever they are, was involved in a lot of buys in telephone conversations after that point for at least a year. And also CS2 who was incarcerated actually was, they said that they couldn't participate in these buys because the other informants were incarcerated, but CS2 actually was involved in a controlled purchase in April of 03. And also there was the omission about the cooperating witness that was found to debrief two weeks after the first biotech application. So, and that informant had information about Lococo. So all these things were omitted to really make it seem like this biotech application was necessary when in reality, it was very questionable. And briefly on the sentencing issue, I would just like to clarify Edward's Apprendi argument is just that he did not, the amount of drugs he admitted to would have only given him a maximum of 40 years. And because they found further amounts of drugs. How do you get past the appeal waiver? Because it was a constitutional argument. Apprendi. On the grounds that Apprendi is a constitutional argument. Okay. Okay. And because of the other drug findings, he was exposed to a higher statutory maximum. Now it's true that he also did have a felony prior drug conviction, which would make the statutory max also life. But Edward's argument is that first the Apprendi issue should be looked at first. And, you know, just based on the drug quantity. Didn't he admit the drug quantity? Pardon? Didn't he admit the drug quantity? Um, well, it's his position that he admitted to a very small amount. 7.09 grams is what he admitted to. And he did admit to some conduct, but he actually did not admit to any other particular, you know, amount of drug amounts. So I will get the plea agreement. Okay. So  what do you do with ER-158? ER-158. The court, okay, having in mind everything we discussed today, I believe count one, violation of Title 21, that you conspire to knowingly and intentionally possess with intent to distribute cocaine in the amount of at least 500 grams of a mixture of cocaine or 50 grams or in excess of 50 grams of cocaine base. How do you now plead? Guilty or not guilty? The defendant guilty. That's your client. Well, it's defendant's position that, you know, obviously from what he said later, you know, he didn't really understand that, you know, as far as defendant was concerned. You're trying to set aside the guilty plea? No, we're not trying to set aside the guilty plea. I'm sorry, you're trying to let stand the guilty plea but undermine what he pled guilty to? I've never heard of that animal. Basically, it's a maddened argument is that he didn't, it wasn't very specific. How much more specific can you get? At least 500 grams of a mixture of cocaine or 50 grams or in excess of 50 grams of cocaine base. How much more specific than that can you get? And he says guilty. Well, his argument is just that, you know, what he, he specifically agreed to what was in the factual basis, the factual basis really does not, you know, include any particular amount except for that one small amount. Okay, so when he says guilty here, he doesn't sign on to the thing that the judge asked him, but he's not, you know, basically not signing on to a particular drug amount. So, but I have to write the opinion explaining why I'm reversing the district judge on this. What am I going to say? How am I going to deal with this paragraph? How am I going to explain this to the world? I mean, I have to quote it to be honest, right? I have to quote it and say, okay, you know, he said this and the district judge says this and the defendant says guilty in open court. And nevertheless, that is not an admission on him because, and why don't you fill in the rest of the opinion for me, just as a draft. Well, because from statements that he made later, it's obvious that he wasn't, that wasn't the drug amount that he thought that, you know, he was agreeing to. He's not really... He made a mistake? No, he basically, the way he interpreted, you know... But this is no longer an apprendi argument. Your client admits it. You now are quibbling with whether or not he admits it or he understood and all of that, but this is no longer an apprendi argument. This is not a situation where the district judge makes a finding. This is a situation where he admits it. Now you want to quibble about whether or not he did in fact admit it or not. I guess it's... Is that an apprendi claim? Well, I guess you could say he is disputing that, you know, he actually admitted to a particular amount and... I understand and that's what you're telling me. Why is that a constitutional argument? It would be a constitutional argument because what he is saying that he agreed to, the amount that he agreed to was a small amount and then they found a greater amount, so it increased the statutory max. That's basically his argument. And what is a constitutional argument? You've just sort of said the same thing again. Apprendi that, you know, without, you know, based on a judicial determination, it increased the statutory max. But if you admit it, you don't need that. Well, that's the point is a dispute as to whether, you know, he actually admitted it because of his comments that he made later. So that's certainly up to the court. That's your constitutional argument. Right, that there was a dispute. That sounds like an attack on the plea. An unknowing and perhaps an unknowing... Well, he's not totally attacking his entire plea agreement, just that... Just the party doesn't like. Just in regards to the drug quantity that he's disputing that he admitted it. Okay. That's basically it. And if there's no further questions, this is it on the rest. Thank you. Okay. Good morning, Your Honors. May it please the court. Jennifer Corbett on behalf of the United States. I would divide up my time or the defense arguments into essentially three issues. The first being the wiretap. The government's position is that the wiretap was properly authorized by Judge Mass. Second, there was no government misconduct in this case. That pertains both to the plea agreement and as well to the motion to dismiss. And third, the sentences in this case were proper and should be upheld by the court. With respect to the wiretap, Judge Mass did not abuse his discretion in this case because there was ample evidence of necessity presented to the court. And the wiretap affidavit for target telephone number one detailed many measures that were undertaken by the investigating agents and explained why it was the opinion of the agent based on his training and experience that these had not been successful, had not uncovered the evidence pertaining to the conspiracy, or why they were too dangerous. And those efforts were explained in terms of informants, physical surveillance. The CS-1 did not get taken out of commission when the surveillance equipment was discovered. That's true with respect to Defendant Jackson. Defendant Jackson continued to deal with CS-1 and that fact was presented to the judge. The issue really with CS-1 went more to how useful could the information that CS-1 could obtain be. CS-1 had bought drugs from Jackson after being discovered, had bought drugs from Jackson again. The problem with that was that CS-1 could not go beyond Jackson. In fact, it's recounted in the affidavit that there was a time where CS-1 asked Jackson for a ride and Jackson said, no, I have to go pick up two birds, so I have to go solo. Jackson actually telling her, I am not going to bring you on any of my trips to the drug supplier. That was not available. CS-1 could not find out where Jackson was obtained the drugs from. So Jackson knew that CS-1 was a government informant and kept dealing with her? Jackson apparently had enough of a personal relationship with CS-1 and may have been willing, because she was a good customer, to take on the risk that she was an informant. She did make the threat that if anything happened to her or her boyfriend. It's kind of a broken wheel. It's the only game in town. Perhaps CS-1 was a very good customer, but at any rate, Jackson did continue to deal with her. Perhaps there were certainly other... But she was burned as to other suspects. She was, as to the Pueblo bishops, including... But this was not a situation where they had to extract CS-1 because she was burned, or he was burned, whatever it was, right? It was a... Simply became less useful. That's correct. They did extract her from the apartment, which was located in the Pueblo bishops gang-controlled area, and they made the determination not to put her back in that area to attempt to do transactions with other members of the Pueblo bishops gang because of her safety. But again, Defendant Jackson decided to continue dealing with her. With respect to the other confidential sources, confidential sources two, three, and four, aside from the fact that they were still incarcerated at the time of the affidavit for target telephone number one, there was also the issue of who they knew as contacts. At most, they had dealt with either Defendant Deal or Defendant Jackson. And again, there was an issue, even if they were not incarcerated, as to what type of information they would be able to obtain. And the information that they would be able to obtain was insufficient to uncover the scope and many other aspects of this particular drug organization. And CS-5 and CS-6 had maintained and continue to maintain that they would not engage in any kind of drug transaction with these subjects or engage in any activity that might cause their identities to be revealed. And so their usefulness was very limited and was restricted to essentially background information. The physical surveillances in this case had been tried and failed. Do you want to address the sentencing questions? Certainly, Your Honor. I'm particularly interested with respect to, I think it's Mr. Lococo, as to why he hasn't raised a constitutional question that would fall outside of his appeal waiver. I think that the government's position is that the Apprendi issue does essentially go back to a constitutional issue. He does raise other sentencing challenges which are not constitutionally based, including his criminal history and the reasonableness to the extent he challenges that. But the government would agree that to the extent there's an Apprendi challenge, that's a constitutional challenge. Yes. And in his case, I'm just trying to remember that he had an unspecified amount that was charged and then what he was sentenced on was a specific amount and it included crack cocaine, correct? That's correct. Why isn't that an Apprendi violation and why doesn't he get relief on that? It's not his case because there is the option to waive, which he took. Or did he waive Apprendi? He waived his right to have the determination made by a jury. 272-273? That's correct, Your Honor. It's ER Volume 2, 272-273, right? And is that in light of his plea agreement, does it meet with the Apprendi waiver requirements that we've had in other cases? Yes, Your Honor. It's not the same as other cases and I would, again, sort of take the court back to the time that this plea was taken, which was between Blakely and Booker. And so, in particular, we did not have the remedial opinion that came out with Booker and so there was a lot of uncertainty, not only as to the guidelines, but even as to factors that affected sentencing. So I think, to a certain extent, there was an overlap here between both Apprendi issues and sentencing guideline issues. But what the colloquy shows, together with the plea agreement, was that what the parties were doing was allowing defendant to plead to the elements but not to quantity and to leave that open for the judge to decide. And, in fact, there is, in fact, an unusual amount of dialogue in Mr. Lococo's change of plea between Mr. Lococo and Judge Klausner regarding how it is that he would be sent. But how about as to crack versus powder? As to crack versus powder, there was no waiver with respect to one drug versus the other. Correct. Mr. Lococo did not want to agree, did not make any agreement as to knowledge. He did, however, in the factual basis, agree that he had provided both crack cocaine and powder cocaine to defendant Jackson. And the parties' respective positions were well set forth in advance and at the time of sentencing. And they went to knowledge, which is a slightly different issue than quantity. Well, okay, I guess I'm more concerned about his thing where he says he wants to strike. He says, the government and me came to an agreement that we would strike this. That's what he says during the sentencing. And then in the plea agreement, he also, that is also made clear in, let me just go to the plea itself, earlier in the agreement, there's that whole sentence about the Blakely and et cetera, et cetera. So with respect to the type, is there a waiver on that? The waiver with respect to quantity. There is to the extent that it may be a guidelines issue, but not an apprendee issue. Apprendee being the quantity issue. And it's because in this case, the conspiracy that was alleged involved both powder and crack. And in fact, Mr. Lococo's sentence and the statutory maximum could be based alone on his involvement with powder cocaine. It was the government's position that this, the conspiracy involved both an amount of powder cocaine and an amount of crack cocaine sufficient to trigger a lifetime statutory maximum. However, even if Mr. Lococo's refusal or non-involvement with crack cocaine were taken at face value, he was still involved in 1.5 kilograms of powder cocaine. So it doesn't have the same effect in terms of the triggering of the statutory maximum, which drug he was involved in. So in any event, it would be some kind of a harmless situation in terms of where he ended up? It would, Your Honor. With respect to the waiver of apprendee provided for in the plea agreement, the plea agreement and the colloquy engaged in at the time of the change of plea for both defendants, Edward and Lococo, made clear that the party's understanding was that the amount of drugs involved in the offense was going to be left open for the judge to determine. And that went both to the sentencing guidelines amount calculation as well as the apprendee calculation. With respect to... Let me just get back to the waiver of the quantity. Yes, Your Honor. Was he told at that time that he's waiving his right to a jury trial? I believe he was. And was there like a full explanation of what a jury waiver includes? Like when a defendant waives a jury trial in a regular case? I don't think it was followed along a same type of Rule 11 waiver as with the other waivers. However, the other waivers were taken at the same time. The Rule 11 waivers as to defendant's ability to go to trial were covered as well during the change of plea. So that defendant was admitting to the elements of the offense and was, although not admitting to an amount, was allowing the judge to make that determination as opposed to the jury. But do you think the evidence, because it was part of the overall taking of, I guess, the plea, sufficiently discloses that he knew that he was waiving his right to a jury determination of the amount? Yes, Your Honor. And he knew what that meant in other words, waiver of the jury trial? Yes, Your Honor. And there was some discussion that if you opt for a jury trial, you would get a beyond the reasonable doubt on this. Didn't the judge say that? Yes. Yes. There was some discussion as to the standard applicable. And fortunately, the record in this case shows that Judge Klosner resolved that definitively in sentencing by finding everything beyond a reasonable doubt. So that it didn't create an issue as to a finding per the guidelines and a finding per apprendi using different standards. That was ultimately resolved by just the finding that was made beyond a reasonable doubt to the drug quantity. Your Honor, with respect to, I want to mention, although we haven't talked about extensively the issue of government misconduct, which was raised by defendants. The Lococo wiretap, the 2003 wiretap that is discussed, first of all, was never, the existence of it was disclosed immediately in the case because it was included in one of the prior wiretap applications. It was explicitly referenced in the affidavits for Target Telephone 3 and 4. So defendants were aware of it, did not ask for it until August. As soon as they did, the government produced it immediately. And defendants really have shown that there is nothing in that wiretap affidavit that would have had any effect on their motions to suppress and their decisions to plead guilty. In other words, they have not shown any prejudice, even assuming that they should have been provided that earlier. They were not forced to go to trial or plead without knowledge of it. It was disclosed. And also, the government did not breach the plea agreement. That argument raised by Mr. Lococo is addressed expressly in the plea agreement, which allows the parties to bring facts beyond what is merely in the statement of facts to the attention of the judge prior to sentencing. With all those issues covered, unless the Court has questions, I would submit. Thank you.
judges: Kozinski, Tashima, McKeown